# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES GRELL, | ) |
| | ) |
| Plaintiff, | ) Civil Action  1:23-CV-00328 |
| | ) |
| v. | ) |
| | ) Memorandum in Support of Motion |
| COUNTY OF HAWAI'I, | ) for Preliminary Injunction |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

# MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

**A.** **STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**B.** **LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **1.** **Mr. Grell is likely to prevail on his Second Amendment Claim** . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **2.** **Mr. Grell is likely to prevail on his Due Process Claim** . . . . 12

    ***The Waiver form requirement violates the constitutional right to privacy.*** . . . . . . . . . . . . . . . . . . . . . . . . 12

    ***The requirement to choose between the waiver and the right to carry also violates due process*** . . . . . . . . . . . . . 17

    **3.** **Mr. Grell will suffer irreparable harm** . . . . . . . . . . . . . . . . . 19

    **4.** **The public interest and balance of equities weigh in favor of injunctive relief.** . . . . . . . . . . . . . . . . . . . 23

    **5.** **Waiver of Bond is Proper and Appropriate Under These Circumstances** . . . . . . . . . . . . . . . 25

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

*Am. Trucking Associations, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Board of Comm'rs, Wabaunsee Cty.* v. *Umbehr,* 518 U.S. 668 (1996) . . .   18

*Brende v. Hara*, 113 Haw. 424, 430, 153 P.3d 1109 (2007) . . . . . . . . . . .   14

*DeMassa v. Nunez*, 770 F.2d 1505 (9th Cir. 1985) . . . . . . . . . . . . . . . . .   13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . . . . . . . 5-6, 19

*Doe v. Attorney Gen. of United States*, 941 F.2d 780 (9th Cir. 1991) . . . .   12-13

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) . . . . . . .   23-24

*East Bay Sanctuary Covenant v. Trump*,
349 F.Supp.3d 838 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Evans v. Skolnik*, 997 F.3d 1060 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . .   13

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . 19

*Ferm v. United States Tr. (In re Crawford)*,
194 F.3d 954 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

*Fotoudis v. City & Cnty. Of Honolulu*,
54 F. Supp. 3d 1136 (D. Haw. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*G & V Lounge v. Mich. Liquor Control Comm'n*,
23 F.3d 1071 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Gannett Co., Inc. v. DePasquale,* 443 U.S. 368 (1978) . . . . . . . . . . . . . . . 23

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . 23

*Grace v. District of Columbia,*
187 F. Supp. 3d 124 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jackson v. City & County of San Francisco,*
746 F.3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) . . . . . . . . . 24

*Lee v. Corregedore*, 83 Haw. 154, 925 P.2d 324 (1996) . . . . . . . . . . . . .  14

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) . . . . . . . . . . . . . . . . .  19

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) . . . . . . . . . .  19

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) . . . . . . . . . . .  20-21

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022) . . . . . . . . . . . . . . . . . . . . . . .  1, 6, 19

*Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425 (1977) . . . . . . . . . . . . . . . .  12

*Norman-Bloodsaw v. Lawrence Berkeley Lab.,*
135 F.3d 1260 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Painting Industry of Hawaii Market Recovery Fund v. Alm,*
69 Haw. 449, 746 P.2d 79 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*People of the State of Cal. ex rel. Van De Kamp v.*
*Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) . . . . . . .  25

*Perry v. Sindermann*, 408 U.S. 593 (1972) . . . . . . . . . . . . . . . . . . . . . . .  18

*Planned Parenthood of S. Ariz. v. Lawall,*
307 F.3d 783 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) . . . . . . . . . . . . . . . .  24

*Rhode v. Becerra*, 445 F. Supp. 3d 902 (S.D. Cal. 2020) . . . . . . . . . . . . . 20

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . .  24

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47  (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . 5

*Simmons v. United States,* 390 U.S. 377 (1968) . . . . . . . . . . . . . . . . . . .   17

*State v. Joseph*, 109 Haw. 482, 128 P.3d 795 (2006) . . . . . . . . . . . . . . . .   18

*State v. Mallan,* 86 Hawaiʻi 440, 950 P.2d 178 (1998) . . . . . . . . . . . . . . . 14

*State v. Yong Shik Won*, 137 Haw. 330, 372 P.3d 1065 (2015),
*as corrected* (Dec. 9, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Tucson Woman's Clinic v. Eden*, 371 F.3d 1173 (9th Cir. 2004) . . . . . . . . . 12, 13,
16

*Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016) . .   11

*United States* v. *Am. Library Ass'n,* 539 U.S. 194 (2003) . . . . . . . . . . . .   18

*United States v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 16

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) . . . . . . . . . .   24

*Whalen v. Roe*, 429 U.S. 589 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) . . . . . . . . . . 5

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) . . . . . . . . .   20

*Yukutake v. Conners*, 554 F. Supp. 3d 1074 (D. Haw. 2021). . . . . . . . . . .   7

**Statutes and other authorities**

Haw. const. Art. 1 § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Haw. Cty. Code § 14-119.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

### Unreported Cases

*Duy Mai v. United States*, 18-36071, 974 F.3d 1082 (Table),
2020 WL 5417158 (9th Cir. Sept. 10, 2020). . . . . . . . . . . . . . . . . . . . . . 8, 11

*Firearms Pol'y Coal., Inc. v. McCraw*,
No. 4:21-CV-1245-P, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022) . . . . 6

*Fisher v. Kealoha*, No. CIV. 11-00589 ACK,
2012 WL 2526923 (D. Haw. June 29, 2012) . . . . . . . . . . . . . . . . . . . . . . 20

*Santucci v. City & Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM,
 2022 WL 17176902 (D. Haw. Nov. 23, 2022) . . . . . . . . . . . . . . . . . . . . . 12, 21-22
                                                                        23

*United States v. Price*, No. 2:22-CR-00097,
2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022) . . . . . . . . . . . . . . . . . . . 6

*United States v. Quiroz*, No. PE:22-CR-00104-DC,
2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) . . . . . . . . . . . . . . . . . . . 6

### Treatises

11A Charles Alan Wright et al.,
FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995) . . . . . . . . . . 19

1 Frederick Pollock & Frederic William Maitland,
*The History of English Law Before the Time of Edward I* 507-08 (1898) . 11

1 Jean-Jacques Burlamaqui, *The Principles of
Natural and Politic Law* 82 (1747) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1 William Blackstone, *Commentaries* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Carlton F.W. Larson, *Four Exceptions in Search of a Theory:
District of Columbia v. Heller and Judicial Ipse Dixit*,
 60 Hastings L.J. 1371 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

John Locke, *Two Treatises of Government* (1691),
*reprinted in* 4 John Locke, *The Works of John Locke* 207,
339, 342 (12th ed. 1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

On June 23, 2022, the United States Supreme Court released its opinion styled *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2118 (2022).  This landmark decision affirmed that, indeed, "bear" as that term is contemplated by the Second Amendment of the United States, constitution means "to carry."  As such, the Second Amendment guarantees the right of law-abiding citizens to carry a firearm for the purpose of self-defense.

Before *Bruen* was decided each of the counties relied on Chapter 134 of the Hawai'i Revised Statutes which provided the various chiefs of police absolute discretion in determining applicants' suitability to carry.  The net result is few, if any, carry permits were issued.

Defendant County of Hawai'i (the "County") was the first in Hawai'i to adopt ordinances governing the issuance of carry permits post-*Bruen*.  Mr. Grell challenges the County of Hawai'i's response to *Bruen* and, specifically, the Hawai'i Police Department's ("HPD") execution of the ordinances.

## A.  STATEMENT OF FACTS

In response to *Bruen*, the County adopted or amended Chapter 14 of its county ordinances ("the Ordinance") to govern the carrying of firearms in the County. Section 14-119.3 of the Hawai'i County Code now states "[t]he chief of police shall establish rules and regulations necessary to administer this article, pursuant to chapter 91, Hawai'i Revised Statutes."

The HPD chief of police currently requires, *inter. alia.*, that Hawaiʻi County applicants for a permit to carry execute a notarized "Waiver of Liability and Release Form for Application for License to Carry Firearms and Weapons" (the "Waiver" or "Waiver Form").  Exhibit One.  The Waiver requires:

a.      That the applicant prospectively waive any and all potential claims (apparently even those unrelated to the application process) against anyone who might provide information in connection with the application:

> I, _____, applicant, hereby release from liability and promise to hold harmless from any liability under any and all possible causes of legal action any and all persons that shall furnish any information or opinions regarding applicant's background, family, personal habits or reputation in order to determine whether applicant is able to meet the qualifications to carry a firearm in the County of Hawaiʻi.

b.      That the applicant prospectively waive any and all legal privileges in connection with information provided [vaguely] in connection with the application process:

> Further, the undersigned waives for this purpose any and all legal privileges I may have to maintain such information as confidential, including but not limited to the following privileges: attorney-client, clergyman-penitent, husband-wife, physician-patient, psychologist-client, creditor-customer, and accountant-client.

c.      And, that the applicant prospectively waive all legal rights as well as any and all potential claims against the Hawaiʻi Police Department in connection with the application process:

The undersigned further agrees to hold harmless and release from liability under any and all possible causes of legal action the Department, its officers, its employees, and its agents, for any statements, acts, or omissions in the course of its investigation into applicant's background, family, personal habits, and reputation. I further realize that it is necessary for the Department to thoroughly investigate all aspects of applicant's personal background and qualifications and, by applying for a License to Carry a Firearm in the County of Hawaiʻi, I expressly waive all of my legal rights and causes of action to the extent that the Hawaiʻi Police Department investigation (for purposes of evaluating my suitability or application to carry a firearm) may violate or infringe upon these aforementioned legal rights and causes of action. I hereby authorize the Department to reproduce this form to be used solely for the purposes of my Application for a License to Carry a Firearm in the County of Hawaiʻi.

Exhibit One.

The Form clarifies that the release from liability to the Department applies to any right of action:

This release from liability given by the undersigned to the Department, its officers, employees, agents, and all others as heretofore provided, shall apply to any right of action that might accrue to the undersigned, my heirs, and personal representatives.

Exhibit One.

On April 17, 2023, Mr. Grell applied for a permit to carry a concealed firearm.  Mr. Grell included a cover letter explaining that Mr. Grell did not agree to the Waiver.  Based on this explanation, Mr. Grell left the Waiver Form blank. Exhibit Two.

On April 24, 2024, the HPD notified Mr. Grell that they were unable to process his application because the Waiver was not signed or notarized and

because his money order was not made payable to the County Director of Finance.  Exhibit Three.

On or about May 5, 2023, Mr. Grell re-submitted his application and payment.  Mr. Grell corrected the payee on the money order.    In a cover letter, Mr. Grell again explained that he did not wish to waive those rights listed on the waiver form.  Accordingly, the waiver form was unsigned.  Exhibit Four.

On May 17, 2023, the HPD wrote Mr. Grell a letter stating "we are unable to accept your application at this time" due to the Waiver Form.  The HPD acknowledged that Mr. Grell had indicated that he did not wish to sign the Waiver and instructed that "should he elect to re-apply," Mr. Grell must provide a signed and notarized Waiver Form.  Exhibit Five.

Mr. Grell does not wish to prospectively waive all potential claims against those who may defame or otherwise injure him, including the County and its informants.  Mr. Grell does not wish to waive all legal privileges that are in place to protect his constitutionally guaranteed right of privacy.  Mr. Grell wishes only to waive only those medical privacy rights necessary to confirm that Mr. Grell is qualified to exercise his Second Amendment rights.

The chief of police may not require all of these broad all-encompassing waivers and a general release from liability before a law-abiding citizen may be permitted to exercise a fundamental constitutional right.  This Court should issue

the requested preliminary injunction.

## B. LEGAL ARGUMENT

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1.  Mr. Grell is likely to prevail on his Second Amendment Claim.

When deciding whether a government action violates the Second Amendment, courts in the Ninth Circuit have always first "ask[ed] whether the challenged law burdens conduct protected by the Second Amendment …" *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016).  "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' based on a 'historical understanding of the scope of the [Second Amendment] right,' *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008), or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

Here, there can be no reasonable argument that the conduct at issue, *i.e.*, the right to *bear* arms, is protected by the Second Amendment.  The right to "bear" arms means the right to carry arms in public for the purpose of self-defense. *Heller*, 554 U.S. at 584 ("[a]t the time of the founding, as now, to 'bear' meant to

'carry.'"). The precise holding of *Bruen* specifically affirms that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122 (2022).

Where the challenged government action burdens conduct protected by the Second Amendment, courts no longer apply a suitable level of means-end scrutiny.  Instead:

> [t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Bruen*, 142 S. Ct. at 2130; *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) ("Next, the Government must justify its regulation through a historical analysis. To do so, the Government's historical inquiry must show that § 922(n) is consistent with the historical understanding of the Second Amendment."); *Firearms Pol'y Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996, at *8 (N.D. Tex. Aug. 25, 2022) ("The burden therefore falls on Texas to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."); *United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *3 (S.D.W. Va. Oct. 12, 2022) (if the statute burdens conduct protected by the Second Amendment, "the statute is presumptively unconstitutional unless the Government can show that 'it is consistent with the Nation's historical tradition of firearm

regulation.' This analysis is constrained by the Supreme Court's definition of 'historical tradition' as the time of the founding and ratification of the Second Amendment in 1791.") (citations omitted).

Notably, citations of a series of 19th and 20th century statutes or regulations is insufficient for the government to meet its burden. The focus must be on restrictions in existence *at the time of the founding*:

> But a handful of similar laws from the 1930s, without more, is insufficient to establish that the State of Hawaii's law belongs to a "longstanding" historical tradition of "presumptively lawful" firearm prohibitions. *Young*, 992 F.3d at 783.
>
> *Young* clarified the test for whether a law is "longstanding and presumptively lawful," explaining that the *purpose* of conducting the historical analysis is to determine whether the challenged law falls within the scope of the right as it was understood during the founding era. *Id.* That is, "[l]aws restricting conduct that can be traced to the founding era and are historically understood to fall outside of the Second Amendment's scope may be upheld without further analysis." *Id.* (quoting *Silvester*, 843 F.3d at 821). Evidence of similar restrictions found in ancient English law, founding era laws, and early post-ratification laws provide persuasive evidence of the historical understanding of the scope of the right. *Id.* By contrast, "twentieth-century developments ... may be less reliable as evidence of the original meaning of the American right to keep and bear arms." *Id.* at 811.

*Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1082–83 (D. Haw. 2021) (rejecting state's argument that regulation dating back to 1933-34 and supported by similar regulations in four other states "during that [same] era" was sufficient evidence of historical understanding).

Here, the government cannot meet its burden of showing that the waiver of all legal privileges, a general release of all claims for those providing information to the government, and/or a release of all potential claims for government wrongdoing during the application process are "consistent with the Nation's historical tradition of firearms regulation."

Indeed, there is no such historical tradition.  The County will undoubtedly argue that, as stated on the form, the waivers are somehow needed to "to make a thorough investigation of [the applicant's] background, family, personal habits, and reputation for the purpose of determining my fitness and suitability for a License to Carry a Firearm in the County of Hawai'i." However, firearms were historically regulated based on the use of the weapon rather than who could exercise the Second Amendment right.  *See Duy Mai v. United States*, 18-36071, 974 F.3d 1082 (Table), 2020 WL 5417158 at *16-17 (9th Cir. Sept. 10, 2020) (J. Vandyke, *dissenting from denial of rehearing en banc*) ("Historical regulations of the right to bear arms focused more on how people *used* weapons—not who could own them. …Indeed, the first decision addressing a firearms regulation based on the *condition* of a person (rather than the manner of carrying) did not arise until 1886.").

Yet, the HPD seeks to "thoroughly investigate all aspects of the applicant's personal background."  The Waiver form repeatedly reiterates the broad scope of the investigation in its various waivers and releases, including language such as:

- "any and all persons that shall furnish any information or opinions regarding applicant's background, family, personal habits or reputation …"

- "[t]he undersigned hereby authorizes any person or legal entity who may be contacted by Department officers, employees, or agents  to release and transmit to such officers, employees, or agents, any information, data, or opinions they may have regarding my background, family, personal habits or reputation. …"

- "the undersigned waives for this purpose any and all legal privileges [the applicant] may have to maintain such information as confidential, including but not limited to: [every imaginable legal privilege]. …"

- "The undersigned further agrees to hold harmless and release from liability under any and all possible causes of legal action the Department, its officers, its employees, and its agents for any statements, acts, or omissions in the course of its investigation into applicant's background, family, personal habits, and reputation."

Exhibit One.  Most succinctly, the Waiver form requires the applicant to waive "all legal rights."  *Id*.  Undoubtedly the motivation behind the waiver of these rights is to transform the current legal landscape from a "shall-issue" permit requirement post-*Bruen* back to the pre-*Bruen* "may issue" discretionary scheme where the police chief is free to subjectively deny any applicant for any reason.

Fortunately, there is no relationship between any *necessary* investigation and the endlessly broad waiver of privacy demanded by the form and including: attorney-client privilege, spousal privilege, clergy privilege, creditor-customer

privilege (whatever that means), and any privacy the applicant might enjoy with his accountant.  *See* Exhibit One. It is objectionable that the HPD would even attempt to contact the applicants' attorney, priest, spouse, creditors and accountants. Moreover, the scope of the information that HPD apparently will seek from the persons involved in these sensitive relationships is just as broad and includes *any and all*.

Unsurprisingly, it will prove impossible for the County to produce a shred of authority supporting this demand that an applicant reveal all aspects of his private life to a police officer before enjoying his second amendment right to bear firearms. These all-encompassing privacy waivers fail the *Bruen* analysis.

Moreover, while the government may have an interest in forcing an applicant to waive potential claims against those who may injure the applicant in providing information to the government and against the government itself *for any acts* in relation to this "thorough investigation," the County can produce no colonial-era authority requiring a citizen to waive such potential liability.  Accordingly, this ill-conceived requirement also fails pursuant to *Bruen*.

The only possible waiver that is remotely related to any arguably necessary investigation in this context is the medical waiver.  However, that too is overly broad as stated on the waiver form.  The form requires a complete waiver of any "physician-patient" or "psychologist-client" privilege.  "[S]cholars have "search[ed]

in vain through eighteenth-century records to find any laws specifically excluding the mentally ill from firearms ownership." Carlton F.W. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1376 (2009). Such laws would be highly unusual in a context where regulations focused on use rather than ownership. *Mai v. United States*, 974 F.3d 1082, 1088-89 (9th Cir. 2020) (Bumatay, dissenting from denial of rehearing en banc). "Given the paucity of Founding-era laws specifically prohibiting gun ownership by the mentally ill, we are better served by exploring the dominant thinking on mental illness in that period." *Id.* "Influential philosophers of the day understood that rights attach with the attainment of "reason" and, correspondingly, the loss of rights persisted only through the loss of reason." *Id.* (citing *Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678, 705-06 (6th Cir. 2016) (Batchelder, J., concurring) (citing 1 Jean-Jacques Burlamaqui, *The Principles of Natural and Politic Law* 82 (1747); John Locke, *Two Treatises of Government* (1691), *reprinted in* 4 John Locke, *The Works of John Locke* 207, 339, 342 (12th ed. 1824); 1 Frederick Pollock & Frederic William Maitland, *The History of English Law Before the Time of Edward I* 507-08 (1898)). "Thus, an "insane" person was one who "by disease, grief, or other accident hath lost the use of his reason." *Id.* (citing 1 William Blackstone, *Commentaries.*).

Accordingly, any "waiver" should be limited to the government's actual interest in determining qualifications for carrying a firearm, *i.e.*, whether the applicant has lost command of his reason, or stated otherwise, whether he is a danger to himself or others.[1]   Again, the County can point to no colonial restriction that would require more and, the HPD's restriction on the exercise of the Second Amendment fails scrutiny under *Bruen*.

### 2.  Mr. Grell is likely to prevail on his Due Process Claim

***The Waiver form requirement violates the constitutional right to privacy.***

It has long been recognized that the constitutional right of privacy protects personal information in which an individual has a "legitimate expectation of privacy," *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 458 (1977).  The "Fourteenth Amendment's concept of personal liberty protects the individual interest in avoiding disclosure of personal matters," *Whalen v. Roe*, 429 U.S. 589, 598 n.23, 599 (1977). *See also Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1193 (9th Cir. 2004). "The constitution protects two kinds of privacy interests. 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence

---

[1] Mr. Grell concedes that the County is also entitled to investigate Mr. Grell's criminal history to determine whether he has any disqualifying convictions. However, as shown, the waiver goes far beyond releasing the information necessary for that determination.

in making certain kinds of important decisions,'" *Doe v. Attorney Gen. of United States*, 941 F.2d 780, 795 (9th Cir. 1991) (quoting *Whalen*, 429 U.S. at 599).

The constitutional right of privacy is also specifically included in the Hawaiʻi constitution:

> **Section 6.** The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right. [Add Const Con 1978 and election Nov 7, 1978]

Haw. const. Art. 1 § 6.

Courts have repeatedly held that the constitutional right of privacy extends to medical and psychological records. "Individuals have a constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical information." *Eden*, 371 F.3d at 1193. "The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998). "There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980).

The Ninth Circuit has also explicitly held that the attorney-client privilege carries the requisite "legitimate expectation of privacy" to afford such

13

communications constitutional protection.  *Evans v. Skolnik*, 997 F.3d 1060, 1075-76 (9th Cir. 2021); *DeMassa v. Nunez*, 770 F.2d 1505, 1507 (9th Cir. 1985) ("there is an enhanced privacy interest underlying the attorney-client relationship which warrants a heightened degree of judicial protection ....").

Moreover, Article 1 section 6 of the Hawai'i constitution protects all "highly personal and intimate" information, which specifically includes "medical, financial, educational, or employment records." *Painting Industry of Hawaii Market Recovery Fund v. Alm,* 69 Haw. 449, 454, 746 P.2d 79, 82 (1987); *State v. Mallan,* 86 Hawai'i 440, 443 n. 4, 950 P.2d 178, 181 n. 4 (1998); *Brende v. Hara*, 113 Haw. 424, 430, 153 P.3d 1109, 1115 (2007).

The right to privacy between penitent and clergy is codified as Hawai'i Rules of Evidence, Rule 506.  *Lee v. Corregedore*, 83 Haw. 154, 170, 925 P.2d 324, 340 (1996) (noting that the legislature broadened the scope of the privilege when codifying the rule).

Each of the categories included in the Waiver form's recitation of non-exclusive "legal privilege(s)" necessarily entail constitutionally protected privacy interests.  Once it is established that a privacy interest is at stake our precedents demand that we "engage in the delicate task of weighing competing interests" to determine whether the government may properly disclose private information.

*Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999)

(quoting *Doe v. Attorney General*, 941 F.2d at 796).

> The relevant factors to be considered include:
>
> . . . the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999)

(quoting *Doe v. Attorney General,* 941 F.2d at 796). "This list is not exhaustive, and

the relevant considerations will necessarily vary from case to case. In each case,

however, the government has the burden of showing that 'its use of the information

would advance a legitimate state interest and that its actions are narrowly tailored to

meet the legitimate interest,'" *Id.* (quoting *Doe v. Attorney General,* 941 F.2d at

796).

Not one single factor favors the government in this case.  The information at

issue is subjective, all-inclusive, and includes broad swaths of highly protected

private information.   There are literally no safeguards in place to protect

dissemination – to the contrary, the applicant is required to waive any and all

recourse that he may have in the event of dissemination and immunize all of the

potential tortfeasors leaving no deterrent whatsoever.   Moreover, there is no

authority whatsoever for the HPD to demand all of this information.  Again, to the contrary, the HPD's authority to demand such information is limited by regulations that were in place in colonial times.

Moreover, the required Waiver Form both substantively violates constitutionally protected privacy rights by requiring the applicant to authorize disclosure of the private and privileged information, *and* by requiring the applicant to waive any and all assurance that the private information will not be made publicly available or even that access to the information would be limited within the confines of the HPD:

> In *Lawall II*, we held that the right to informational privacy 'applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public.' *Id.* at 789-90. Even if a law adequately protects against *public* disclosure of a patient's private information, it may still violate informational privacy rights if an unbounded, large number of government employees have access to the information.

*Eden*, 371 F.3d at 1193 (quoting *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783 789-790 (9th Cir. 2002)). Indeed, the applicant is forced to prospectively release the HPD and all of the providers of information from any and all liability from wrongful disclosure or misuse of the private information.

Finally, the Waiver form is written in a manner that is inapposite with the government's duty to narrowly tailor such infringing regulations.  When constitutional privacy rights are at stake, "[i]t is the state's burden to demonstrate

16

that 'its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest.'" *Lawall*, 307 F.3d at 790 (quoting *Westinghouse Elec. Corp.*, 638 F.2d at 578). Here, there is no attempt at narrow tailoring. Indeed, other than the limited medical inquiry, discussed above, the HPD has no interest in demanding the disclosure of the information in the first place. And, if there existed any such interest, the HPD must provide some assurance against unnecessary dissemination or misuse instead of a general waiver of liability specifically for any future unnecessary dissemination or misuse.

Mr. Grell is highly likely to prevail on his due process claim insofar as it involves a substantive violation of his right of privacy.

### The requirement to choose between the waiver and the right to carry also violates due process

As discussed above the right to bear arms is a fundamental right as is the constitutional right to privacy. Yet, most succinctly, the form requires waive "all of [the applicant's] legal rights" to privacy and recourse for privacy violations should the applicant choose to pursue his right to bear arms under the procedure set up by the County as executed by the HPD.

Constitutional rights do not present as a cafeteria plan where a citizen must choose one in favor of the other. The United States Supreme Court and the Hawaiʻi Supreme Court have both specifically recognized as much in the context of criminal cases. *Simmons v. United States,* 390 U.S. 377, 394 (1968) ("In these circumstances,

we find it intolerable that one constitutional right should have to be surrendered in order to assert another."); *State v. Yong Shik Won*, 137 Haw. 330, 347–48, 372 P.3d 1065, 1082–83 (2015), *as corrected* (Dec. 9, 2015) (same).

> This principle has also been applied in the civil context:

> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests -- especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser* v. *Randall*, 357 U.S. 513, 526. Such interference with constitutional rights is impermissible.

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972); see also *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 58  (2006) ("[L]egislation that raises armies is subject to First Amendment constraints"). *United States* v. *Am. Library Ass'n,* 539 U.S. 194, 210 (2003)  ("[w]e recently held that 'the government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'") (quoting *Board of Comm'rs, Wabaunsee Cty.* v. *Umbehr,* 518 U.S. 668, 674 (1996) (some internal quotation marks omitted)).        The Hawaiʻi Supreme Court perhaps stated it best as "the government may not condition a right guaranteed in our constitution on the waiver of an equivalent constitutional protection."  *State v. Joseph*, 109 Haw. 482,

497, 128 P.3d 795, 810 (2006).  This trade-off is exactly what the County seeks – either Mr. Grell can all-inclusively waive his constitutional right of privacy (and to potentially seek redress for any wrongdoing) or Mr. Grell can forego his fundamental right to bear arms.  This result is intolerable and Mr. Grell is likely to prevail on this due process claim. Notably, a finding that Mr. Grell is likely to prevail on his Second Amendment claim or either of his asserted due process claims weighs in favor of issuing the requested preliminary injunction.

### 3.  **Mr. Grell will suffer irreparable harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is *per se* irreparable harm. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. *Ezell v. City of Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law.").

The Second Amendment protects the right to bear arms for self-defense, which is to say to be "armed and ready for offensive or defensive action in a case of conflict with another person." *Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 584) (emphasis added). Because this is a right "for self defense," it is "a right that can be infringed upon whether or not plaintiffs are ever actually called upon to use their weapons to defend themselves." *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016), granting permanent injunctive relief, sub. nom. *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017). When one needs to defend herself, family, or property right now, but is defenseless," that "is the heaviest kind of irreparable harm." *Rhode v. Becerra*, 445 F. Supp. 3d 902, 954 (S.D. Cal. 2020), *overt'd on other grounds, Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119 (9th Cir. 2022).

Courts around the country hold that Second Amendment injuries are irreparable. And this Court has similarly twice found Second Amendment violations constitute irreparable harm. *Fisher v. Kealoha*, No. CIV. 11-00589 ACK, 2012 WL 2526923, at *11 (D. Haw. June 29, 2012); See also *Fotoudis v. City & Cnty. Of Honolulu*, 54 F. Supp. 3d 1136, 1145 (D. Haw. 2014). This Court should do the same here.

Here, Mr. Grell is faced with a Hobson's Choice: he may either forego his constitutional right to bear arms and/or to privacy, or he may subject himself to criminal prosecution for exercising his fundamental right to bear arms.

It would be unprecedented to require Mr. Grell to first break Hawaii state law and present these issues as a defense:

> we held that this doctrine [of requiring no adequate remedy at law and a showing of irreparable harm] does not prevent federal courts from enjoining state officers 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.' When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses—there is no adequate remedy at law.

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (injunctive relief available where imminent threat of criminal or civil enforcement proceedings against those who are affected by an unconstitutional act). There is no real dispute that carrying a firearm without a permit would subject Mr. Grell to an imminent threat of prosecution. And, there is no real dispute that, under the HPD's permitting scheme, Mr. Grell cannot comply with the law without sacrificing his right to privacy. Although monetary damages are generally not sufficient to merit a finding of irreparable harm, the Ninth Circuit has found irreparable harm where a plaintiff was faced with a similar Hobson's Choice. *Am. Trucking Associations, Inc. v. City*

*of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (business's good will would be harmed if unconstitutional act was not followed).

More recently, this Court has found irreparable harm under strikingly similar circumstances.  In *Santucci v. City & Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM, 2022 WL 17176902 (D. Haw. Nov. 23, 2022), a Honolulu applicant answered in the affirmative when asked if he had been diagnosed with emotional or mental disorders.   The Honolulu Police Department responded that the Plaintiff was required to produce:

> written certification from a licensed psychologist, psychiatrist, or medical doctor documenting that you are no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect. No further action will be taken on your application until the required letter is received.

*Santucci v. City & Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM, 2022 WL 17176902, at *2 (D. Haw. Nov. 23, 2022).  This Court summarily found that Plaintiff had shown irreparable harm:

> As for irreparable harm, Santucci is harmed by being asked to provide documentation from his doctor that Section 134-7 does not require him to provide. This harm is irreparable because, as the July 2021 Letter states, "[n]o further action will be taken on your application until the required letter is received." In other words, Santucci will not be able to register (or recover) his firearms until he provides the "required" letter, which, as discussed, is not required by Hawai'i law.

*Id*. at *6.

Mr. Grell is unable to exercise his right to bear a firearm or even apply to do so until he permits the HPD's fishing expedition into his constitutionally protected private information.  The HPD's required waiver and release does not appear anywhere in the Hawaii Revised Statutes or even the Hawaii County Code.  As with the letter in *Santucci*, the HPD's rejection of Mr. Grell's application commands that he sign the waiver "should he elect to re-apply" leaving him with no recourse but to sign the offending document.  Exhibit Five.  Mr. Grell is irreparably harmed.

**4.**  **The public interest and balance of equities weigh in favor of injunctive relief.**

Similarly, the public interest and balance of equities is best reflected in the application of governing law.  As this Court also found in Santucci:

> As for the public interest and balance of the equities,[7] the public interest is best reflected in the statutory language passed by the public's representatives in the Hawai'i Legislature. Specifically, there is a public interest in precluding from firearm registration individuals who have been diagnosed with and remain adversely affected by a *significant* behavioral, emotional, or mental disorder. As discussed, an affirmative answer to Question 11 does not address that interest. There is, thus, no public interest in precluding an individual from registering firearms based solely on his answer to the question in its present form. Similarly, it is in the public interest to have the language of Hawai'i law enforced, as written in the statute, as opposed to in the flawed language of Question 11. *Cf. Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) (explaining that the public interest is benefited by construing statutes "in a manner that avoids serious constitutional questions[,]" even if such construction may impose burden on the government).

*Santucci v. City & Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM, 2022 WL 17176902, at *6 (D. Haw. Nov. 23, 2022).

"[E]nforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 383 (1978)). The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)).

Likewise, in this case, the Waiver Form fails to address any legitimate public interest.  There is no public interest in requiring Mr. Grell to reveal his financial

records, privileged legal communications, and/or spousal and/or clergy communications. Indeed, those disclosures are contrary to the Hawai'i constitution's specific privacy protection. And, while the government may have a limited interest in discovering significant mental defects or brain disorders, this waiver, like the Question at issue in *Santucci*, delves far beyond that inquiry.

## 5. <u>Waiver of Bond is Proper and Appropriate Under These Circumstances</u>

The court may properly dispense with any bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate. Moreover, there being only nominal damages at stake, the amount of any bond would be difficult if not impossible to calculate.

## <u>CONCLUSION</u>

The requested preliminary injunction should issue.

DATED:  Honolulu, Hawaii, August __, 2023.


s/*Richard L. Holc*omb
Alan A. Beck
Richard L. Holcomb
Attorneys for Plaintiff James Grell